**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANTHONY WALKER, JR.,

    Petitioner,

    v.                                    Civil Action No.:  ELH-17-1117

STATE OF MARYLAND

    Respondent.

**MEMORANDUM OPINION**

Petitioner Anthony Walker, Jr. has filed a Petition For Writ of Habeas Corpus.  ECF 1 (the "Petition").  Respondent is the Maryland Attorney General, who filed an answer to the Petition, asserting that the claims are procedurally defaulted and without merit.  ECF 5.  The submission includes several exhibits.  Petitioner filed a reply.  ECF 13.

No hearing is required.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons that follow, I shall deny the Petition.  And, a certificate of appealability shall not issue.

**I.      Procedural Background**

As the case number reflects (17-1117), the Petition was initially filed in 2017.  But, the Petition was dismissed without prejudice on June 20, 2017, because Walker failed to comply with a court order to pay the $5.00 filing fee and submit a motion and affidavit seeking leave to proceed in forma pauperis. ECF 6. Walker subsequently paid the filing fee on June 22, 2017.  Therefore, the court reopened the case on June 23, 2017. ECF 7.

Walker's Petition was dismissed without prejudice for a second time on October 2, 2019, pursuant to Local Rule 102.1.b.iii (ECF 17), after a court Order sent to Walker was returned as undeliverable.  *See* ECF 16; *see also* ECF 18. By correspondence docketed on February 3, 2020 (ECF 19), Walker asked the court to reopen the case.  He made similar requests in submissions docketed on November 16, 2021 (ECF 20), and April 12, 2022 (ECF 22).

The court issued an Order on April 20, 2022 (ECF 24), reopening the case and directing Respondent to supply the court with information regarding Walker's current custody status. Respondent provided that information on May 11, 2022.  ECF 27.  The Court was satisfied that Walker remained in state custody pursuant to the state court conviction for which he seeks relief. ECF 28; *see also* ECF 33. Therefore, Respondent was ordered to supplement the record with the post conviction transcript.  ECF 28.  Respondent provided the court with that transcript on June 15, 2022. ECF 34-1.

## II.        Factual Background

Walker was charged on November 26, 2012, in the Circuit Court for Baltimore County, with first degree sexual offense, second degree sexual offense, first degree burglary, third degree burglary, and second degree assault. ECF 5-1 at 3-5.  The events occurred on or about October 13, 2012.  ECF 5-4 at 19.  Walker waived his right to a trial by jury.  ECF 5-2; *id.* at 8; 16-19.  He proceeded to a bench trial, which commenced on October 8, 2013, before Judge Judith Ensor.  ECF 5-4; ECF 5-5.

Prior to opening statements, the assistant state's attorney advised the trial court and the defense that he had just learned that the complainant, Stacey Penn, previously made an unrelated allegation of sexual assault in Harford County, Maryland that was investigated and dismissed. *Id.*

at 38. Walker was presented with the option of postponing the trial to investigate the information or proceeding with the trial as scheduled. Walker chose to proceed. *Id.* at 39-48.

On the second morning of trial, October 9, 2013, the prosecutor advised the trial court of additional information regarding the Harford County complaint. *Id.* at 162. The assistant state's attorney indicated that after reviewing his notes he realized that another witness told him a couple of months before trial that Ms. Penn had accused someone else of rape, but he did not know if Harford County conducted an investigation. *Id.* at 163-165. Walker was again presented with the option to postpone his trial. *Id.* at 166-171. After initially declining the offer, Walker ultimately decided to postpone the matter for further investigation. *Id.* at 170-171.

The bench trial resumed on October 28, 2013. ECF 5-4.  Walker's counsel raised a motion in limine regarding the information he gathered about the Harford County rape investigation. *Id.* at 3; 8-18. Counsel contended he uncovered evidence that Ms. Penn alleged in Harford County that she was at a party with an African American male who was making her uncomfortable. *Id.* at 10. Later that night, Penn went to bed and was awakened when this same male was raping her. *Id.* According to defense counsel's account of the allegation, Penn was in bed with a friend who did not see the attack or hear Penn's alleged pleas for the rapist to stop. *Id.* Although the alleged assailant was identified, he was never charged.  *Id.* at 10.

Defense counsel argued that he should be permitted to cross-examine Penn on the allegations because there was "overwhelming evidence" that the allegations were "untruthful." *Id.* at 8. The trial court ruled that the evidence did not support the fact that the allegation was untrue, but rather that there was insufficient evidence to prosecute. *Id.* at 16. However, the trial court

permitted defense counsel to ask Penn whether the allegation was false (*id.* at 16-18), which Penn

denied on cross-examination. *Id.* at 52-53.[1]

On October 29, 2013, Walker was found not guilty of first degree burglary, third degree

burglary, and first degree sexual offense. But, he was found guilty of second degree sexual offense

and second degree assault. ECF 5-5 at 29-30. Walker was sentenced the same day to ten years'

imprisonment, with the requirement that he register as a tier 3 sex offender. *Id.* at 30-39.

Walker noted an appeal to the Maryland Court of Special Appeals on November 26, 2013.

ECF 5-1 at 7. He asserted, *inter alia*, that the evidence presented at trial was insufficient to support

his conviction.[2] ECF 5-6 at 3; 29-34. The Court of Special Appeals issued an unpublished opinion

on April 14, 2015, affirming the convictions. ECF 5-8.

Writing for the panel, Judge Douglas Nazarian recounted the facts, as follows, *id.* at 2-3:

> After an evening out with friends at The Hazelwood Inn on October 13, 2012, Stacy Penn invited a small group back to her home to drink and play card games. Ms. Penn's friend, Tina Motherwell, asked if she could invite her boyfriend, Mr. Walker, to the gathering. Ms. Penn agreed.
>
> Ms. Penn testified at trial that after Mr. Walker arrived, his presence made her uncomfortable, and he spent much of the night staring at her from across the room. Indeed, she said, Mr. Walker made her so uncomfortable that she concocted an excuse to end the party and asked everyone to leave. In the intervening time, Ms. Penn had consumed alcohol, but she testified that she was not drunk.
>
> Ms. Penn's guests left around 3:00 a.m., and she went to bed shortly thereafter. She testified, though, that she was awakened sometime later by a man, whom she identified at trial as Mr. Walker, performing cunnilingus on her. She claimed that her bedroom was illuminated by the streetlight, and that not only could

---

[1] Walker raised the limitation on his cross-examination of Stacey Penn as an error on direct appeal. The Court of Special Appeals affirmed the trial court's ruling. ECF 5-8 at 13-14.

[2] Walker asserted two additional claims in his direct appeal unrelated to his habeas corpus petition: the trial court erred in failing to make a finding on the record that Mr. Walker knowingly and voluntarily waived his right to a jury trial, and the trial court erred or abused its discretion in restricting defense counsel's cross-examination of the complaining witness. ECF 5-6.

she make out Mr. Walker's face and clothing, but that his distinctive gold teeth were visible in the night.

Ms. Penn testified that she woke startled, she asked Mr. Walker where her sister was. Mr. Walker responded that he was sorry if he hurt her and told her he was going to watch TV, and he walked downstairs. Ms. Penn called the police, but Mr. Walker was not on the scene when they arrived. He was arrested later.

Walker did not seek further review with the Maryland Court of Appeals. But, on April 20, 2015, Walker filed a *pro se* application for post conviction relief with the circuit court. ECF 5-9. He asserted that (1) the trial court erred in failing to allow his trial counsel to adequately cross examine Stacey Penn on her prior rape allegation, (2) his trial counsel was ineffective for several reasons, and (3) the evidence was insufficient to support his conviction. *Id.* Through counsel, Walker supplemented the application on July 1, 2016, asserting that his trial counsel was ineffective because he failed to impeach Stacey Penn with prior bad acts. ECF 5-10. The circuit court held an evidentiary hearing on July 15, 2016. Walker was the only witness called to testify. ECF 34-1.

The Circuit Court for Baltimore County (Kathleen Cox, J.), issued a Memorandum Opinion and Order on July 18, 2016, denying Walker's application. ECF 5-11. The court noted: "Ms. Penn was the only witness in this crime and therefore impeaching her testimony and character was imperative to the defense strategy." *Id.* at 7. But, the court was of the view that there was "no credible argument that counsel should have been permitted to ask questions concerning these matters," *i.e.*, Penn's prior allegations of sexual assault. *Id.* at 8; *see id.* at 4.

Walker filed an application for leave to appeal on August 12, 2016. ECF 5-12. The only claim lodged in the application for leave was that of ineffective assistance of counsel for failure to impeach Stacey Penn with her prior bad acts. *Id*. The Maryland Court of Special Appeals denied Walker's application on March 13, 2017. ECF 5-13.

5

Walker asserts three grounds in his federal habeas Petition: (1) "I am being held unlawfully because I am not a criminal.  I hate crime . . ." (2) "There was no physical (DNA) evidence in this case because I didn't do this crime . . . ." and (3) "Ineffective Assistance of Counsel. . . ."  ECF 1 at 6.  As to the third ground, Walker alleges in his Petition that he paid his trial counsel $5,500, his trial counsel did not like him, and his trial counsel only cared about collecting his fee. ECF 1 at 6. These claims also appear in the post conviction application. ECF 5-9 at 3.  In the Petition, Walker does not mention the failure of his defense attorney to question Penn about her prior accusations of sexual assault.  But, those claims were clearly raised on post conviction.  *See* ECF 5-11 at 2, 4.

## II.      Standard of Review

This Court may grant a petition for a writ of habeas corpus only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  In *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009), the Fourth Circuit said: "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court is precluded from granting habeas corpus relief "on a claim decided on the merits in a state court unless it determines the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the record evidence.'"  *Crockett v. Clarke*, 35 F.4th 231, 235 (4th Cir. 2022). Moreover, the federal court's review of a State court decision under § 2254 is conducted "through

a narrow lens . . .," requiring a review of "the record in its entirety" as it existed before the post conviction court. *Mahadi v. Stirling*, 20 F.4th 846, 854 (4th Cir. 2021); *see Mays v. Hines*, ___ U.S. ___, 141 S. Ct. 1145, 1149 (2021) (per curiam); *Hyman v. Hoekstra*, ___ F.4th ___, 2022 WL 2813106, at *1 (4th Cir. July 19, 2022). The Fourth Circuit has characterized it as "an extraordinary standard of review." *Crockett*, 35 F.4th at 235.

Claims by a State prisoner that he is in custody in violation of the Constitution or the laws of the United States "implicate concerns about federalism and comity[."] *Crockett*, 35 F.4th at 241. Concerns of comity and federalism "reach their apex" when a state court has previously ruled on an alleged wrongful conviction. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020). Therefore, "the standard for such claims is exceedingly high." *Crockett*, 35 F.4th at 241; *see Burt v. Titlow*, 571 U.S. 12, 19 (2013).

Notably, "the State possesses primary authority for defining and enforcing the criminal law, and for adjudicating constitutional challenges to State convictions." *Shinn v. Ramirez*, ___ U.S. ___, 142 S. Ct. 1718, 1730-31 (2022) (internal quotation marks, brackets, and citations omitted). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted). Therefore, § 2254 "is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams v. Taylor*, 529 U.S. 362, 383 (2000); *see Walters v. Martin*, 18 F.4th 434, 441 (4th Cir. 2021). Therefore, the habeas court may not disturb a state court judgment "absent an

error that lies beyond any possibility for fairminded disagreement." *Mays*, 141 S. Ct. at 1146; *see Walters*, 18 F.4th at 441.

In *Nicolas v. Atty. Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016), the Fourth Circuit explained (citing 28 U.S.C. § 2254(d)):

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a federal court reviewing a habeas petition that has already been adjudicated on the merits in state court to give considerable deference to the state court decision. A federal court may not grant habeas relief unless the state court arrived at "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Factual determinations are unreasonable when they are "'sufficiently against the weight of the evidence . . . .'" *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). But, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (citation omitted).

Also of relevance, the habeas court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicolas*, 820 F.3d at 129; *see also Harrington v. Richter*, 562 U.S. 86, 100-01 (2011); *Walters*, 18 F.4th at 442; 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

For a state court's decision to be contrary to established federal law, the state court must have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or must have confronted facts that are "materially indistinguishable from a relevant Supreme Court" case but nevertheless arrived at the opposite result. *Williams v. Taylor*, 529 U.S. at 405; *see Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005). However, a federal habeas court "'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.'" *Lovitt*, 403 F.3d at 178 (quoting *Williams*, 529 U.S. at 411). Rather, the state court's application of federal law must be unreasonable, not merely incorrect. *Id.*; *see Nicolas*, 820 F.3d at 129 (The court "cannot disturb the State court's ruling simply because it is incorrect; it must also be unreasonable."); *Barnes*, 751 F.3d at 238-39 (a state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts).

If a state prisoner's claim has already been adjudicated on its merits, § 2254 restricts federal habeas relief to limited circumstances. One avenue is found in § 2254(d)(1). Under that provision, the prisoner must show that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The Supreme Court has said, *Williams v. Taylor*, 529 U.S. at 407 (O'Connor, J., delivering the majority opinion with respect to Part II):

> [A] state-court decision can involve an "unreasonable application" of [the Supreme] Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application ... if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case. Second ... if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context

where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

"Federal courts owe state tribunals 'significant deference' with respect to 'their determination that a state prisoner isn't entitled to habeas relief.'" *Crockett*, 35 F.4th at 241 (citation omitted).   Therefore, under § 2254(d)(1), to be "unreasonable," the state court's application of that law must be "objectively unreasonable," not merely incorrect. *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020).

The other means of relief is found in § 2254(d)(2). It requires a prisoner to show that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). *See Crockett*, 35 F.4th at 241.  In other words, the "federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not 'debatable among jurists of reason.' " *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) (emphasis in original) (internal citation omitted).

Again, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts.  *Id.*  This standard is "meant to be" one that is "difficult to meet…"  *Richter*, 562 U.S. at 102.

### III.    Discussion

#### A.  Procedural Default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post conviction proceedings or on direct

appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit explained in *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998):

If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's

11

claims in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Carrier*, 477 U.S. at 496.  "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id*.; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003).  A petitioner who wishes to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence.  *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

Construing Walker's Ground One and Ground Two broadly as seeking relief based on insufficiency of the evidence, these claims are unexhausted and procedurally defaulted. To be clear, Walker raised a sufficiency of the evidence claim on direct appeal (ECF 5-6), which was addressed by the Maryland Court of Special Appeals in affirming his conviction. ECF 5-8 at 14-17. In particular, Walker argued on direct appeal that the evidence was insufficient to support his conviction because there was no physical evidence, including DNA, connecting him to the crime. The Maryland Court of Special Appeals rejected the claim.  It concluded that the "state's inability or election not to produce the physical or corroborating evidence Mr. Walker listed does not render the evidence insufficient to support his conviction. Identification by a single eyewitness, if believed, is sufficient to support a conviction." ECF 5-8 at 16-17.  However, Walker failed to seek certiorari review with the Maryland Court of Appeals, leaving this claim unexhausted on direct appeal. *See* Md. Code, Cts. & Jud. Proc. § 12-201 and § 12–301; *Houck v. Warden, Jessup Corr.*

*Inst*., Civil. No. GJH-14-3092, 2015 WL 4111546, at *2 (D. Md. July 7, 2015) (To exhaust a claim on direct appeal in non-capital cases, it must be raised in an appeal, if one is permitted, to the Maryland Court of Special Appeals and then to the Maryland Court of Appeals by way of a petition for writ of certiorari).

Walker also raised sufficiency of the evidence in his *pro se* post conviction application. But, he failed to include the claim in his application for leave to appeal. *See* Md. Code, Crim. Proc. § 7–109; *Houck*, 2015 WL 411546 at *2 (To exhaust a claim through post conviction proceedings, it must be raised in a petition filed in the circuit court and in an application for leave to appeal to the Court of Special Appeals).

Therefore, Walker's sufficiency of the evidence claim is procedurally defaulted. *See Pevia v. Bishop*, Civil. No. ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and  the state courts would  now  find  that  he  cannot  assert those claims").

Respondent suggests that Ground One and Ground Two might be construed as a substantive claim for relief on the grounds of innocence. *See* ECF 5 at 17. Walker states in Ground One, "I am not a criminal." ECF 1 at 6.  In Ground Two, Walker states that there was no DNA linking him to the crime.  *Id.*

The Supreme Court has never held that habeas relief extends to freestanding claims of actual innocence.  *Herrera v. Collins*, 506 U.S. 390, 404-405 (1993).  "Courts have consistently emphasized that actual innocence for the purposes of *Schlup* [*v. Delo*, 513 U.S. 298 (1995)] is a procedural mechanism rather than a substantive claim." *Finch v. McCoy,* 914 F.3d 292, 298 (4th Cir. 2019) (*citing Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012)).  Thus, a federal habeas

petitioner may assert a claim of actual innocence to overcome a procedural bar to review, *Schlup*, 513 U.S. at 326, or to overcome AEDPA's one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).  Actual innocence, if then proven, "serves as a gateway through which a habeas petitioner may pass" when, for example, AEDPA's statute of limitations has expired. *Finch*, 914 F.3d at 294.  If a petitioner satisfies the requisite standard, the district court may then consider the petitioner's procedurally defaulted claims.  *Id.* at 298.

In order to show "actual innocence" in this context, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent."  *United States v. Mikalajunas*, 186 F.3d 490, 494 (1999) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to present a credible claim of actual innocence, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Schlup* 513 U.S at 324.

Similarly, the Fourth Circuit has said in the context of a habeas case under 28 U.S.C. § 2254: "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup*, 513 U.S. at 325).  Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz*, 689 F.3d at 329).  It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ."  *Finch*, 914 F.3d at 299 (quoting *House v. Bell*,

547 U.S. 518, 539 (2006)).  "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror acting reasonably would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

Walker does not clearly and expressly advance actual innocence.  But, to the extent that Ground One or Ground Two may be construed as a substantive innocence claim, no such claim has been presented to any Maryland state court.  Even assuming the general viability of a substantive innocence claim, such a claim here is unexhausted.

The court next considers whether Walker has established the applicability of any exceptions to the procedural default rule that would allow the claims to proceed. The court sees none. Walker's response to the procedural default argument was a blanket denial that Respondent's arguments for procedural default were correct. ECF 13 at 1.[3]

Walker offers his attestation of innocence, arguing that DNA did not connect him to the crime.  ECF 1 at 6.  But, his statements fall short of the "exacting standard for actual innocence…sufficiently alleging and providing new evidence of a constitutional violation and…demonstrating that the totality of the evidence, both old and new, would likely fail to convince any reasonable juror of his guilt beyond a reasonable doubt." *Finch,* 914 F.3d at 302.

Therefore, the court finds that Ground One and Ground Two, construed as sufficiency of the evidence claims, are procedurally defaulted.[4]  Ground Three, as set forth in Walker's Petition,

---

[3] Walker argues that Respondent takes the position that his claims are procedurally defaulted because he only filed under one docket number. ECF 13 at 2. Walker is mistaken. Respondent argues Walker failed to properly present the claims to Maryland's highest court. *See* ECF 5 at 8-12. Walker also argues that his post conviction counsel was ineffective. ECF 13 at 2-3. However, his arguments about post conviction counsel's ineffectiveness are in connection with the part of Ground Three that the court has interpreted to be exhausted and has addressed on the merits.

[4] Walker filed a pleading in response to the court's Order of June 12, 2018 (ECF 11) to reply to Respondent's procedural default defense. ECF 12. The pleading references the rights to a

was included in his *pro se* post conviction petition. ECF 5-9 at 2-3.  And, Walker's counsel filed

an application to the Maryland Court of Special Appeals for leave to appeal the denial of post

conviction relief.  But, counsel asserted error by the post conviction court in denying relief with

respect to Walker's claim that trial counsel was ineffective for failing to impeach the accusing

witness with prior bad acts.  ECF 5-12.  In other words, he did not pursue the assertions that Walker

had filed when he was self-represented.  And, in Ground Three of the Petition, Walker reiterates

those assertions; he does not argue ineffective assistance based on defense counsel's failure to

impeach Ms. Penn.  Arguably, his claim, as currently framed in Ground Three is not exhausted.

However, I shall liberally construe Ground Three.  I conclude that Walker has exhausted

his claim of ineffective assistance of counsel for failing to impeach Stacey Penn with her prior bad

acts.  I turn to address that claim on the merits.

### B. Ineffective Assistance of Counsel

The record demonstrates that Walker exhausted one claim: ineffective assistance of counsel

for failure to impeach a witness, Stacey Penn, based on prior bad acts. This claim was presented

to the circuit court in Walker's post conviction petition (ECF 5-10) and included in his application

for leave to appeal to the Maryland Court of Special Appeals (ECF 5-12). Ground Three of

Walker's habeas petition asserts that his trial counsel was ineffective with the generic statement

that trial counsel "did not perform well in court." ECF 1 at 6. The Court will construe Walker's

---

"speedy trial," "impartial jury," "confront[ation] of witness[es]," and "equal protection." Walker
does not appear to be raising any additional claims and has not sought leave to amend his petition.
To the extent Walker intended to add any claims in ECF 12, leave is denied. *See U.S. ex rel Wilson
v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir. 2008) (A district court
may deny leave if amending the complaint would be futile). As discussed herein, Walker only
exhausted one claim in the state courts, which has been addressed on the merits in this opinion.
Any additional claims sought to be added would therefore be unexhausted and likely procedurally
defaulted.

petition broadly and assume that Ground Three encompasses Walker's only exhausted ineffective assistance of counsel claim.

Respondent argues that, "[t]o the extent that Walker's claim[] encompasses the sole claim that he presented to both the post-conviction court and the Court of Special Appeals in his application for leave to appeal, the State court properly applied the standard set forth in *Strickland v. Washington*, 466 U.S. 688, 687 (1984) and rejected that claim…"

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 775 (2017); *United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Ineffective assistance of counsel is a well recognized basis for postconviction relief. *See generally Missouri v. Frye*, 566 U.S. 133 (2012); *Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 137 S. Ct. at 775; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229; *Powell*, 850 F.3d at 149; *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *United States v. Dyess*, 730 F.3d 354, 361 (4th

Cir. 2013); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

The first prong is known as the "performance prong," which relates to professional competence. The petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688; *see Richter*, 562 U.S. at 104; *Powell*, 850 F.3d at 149. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has made clear that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775; *see also Powell*, 850 F.3d at 149. In *Padilla*, 559 U.S. at 371, the Court said: "Surmounting *Strickland's* high bar is never an easy task." Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck*, 137 S.Ct. at 775 (citation omitted). Consequently, the performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Richter*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," *Richter*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the

18

wide range of reasonable professional assistance.'"  *Lawrence*, 517 F.3d at 708 (quoting *Strickland,* 446 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Richter*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687.  To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694; *see also Buck*, 137 S. Ct. at 776; *Lafler*, 566 U.S. at 163; *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings.  *Strickland*, 466 U.S. at 687.  However, a petitioner is not entitled to post conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt."  *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Id.* at 697.  Nor must a court address both components if one is dispositive.  *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015).  This is because failure to satisfy either prong is fatal to a petitioner's claim.  As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

Walker's counseled supplement to his post conviction application alleged that his trial counsel was ineffective because he failed to impeach the complainant, Stacey Penn, with prior bad acts, pursuant to Maryland Rule 5-608. ECF 5-10. Walker argued that he was prejudiced by

counsel's failure because Penn was the only witness to the crime and his conviction was completely based on the credibility of her testimony. *Id.* at 6.

The post conviction court dismissed the claim finding, in pertinent part, ECF 5-11 at 7-9:

> The Petitioner argues that his trial counsel should have questioned Stacey Penn regarding prior criminal charges. In one case, Ms. Penn received a STET[5] for disorderly conduct and making a false statement to a police officer. (Petitioner's Ex. 2). In the other case, Ms. Penn received a PBJ[6] for Conspiracy to Intercept Communication. (Petitioner's Ex. 7). The Petitioner introduced docket entries concerning these cases, but no additional information was provided. Based upon those docket entries, the Petitioner argues that cross-examination concerning these matters would have been admissible, as both related to truthfulness.
>
> Ms. Penn was the only witness in this crime and therefore impeaching her testimony and character was imperative to the defense strategy. While the Petitioner admits the impeachment may have been limited in nature, he suggests that if his attorney had the ability to ask any questions about the two above cases, it could have created an inference in the jury's [sic][7] mind that could undermine Ms. Penn's credibility.
>
> The State argues that these two prior bad acts would not have been admissible on cross examination. Neither a STET nor a PBJ is a conviction under the law. Had Petitioner's counsel attempted to introduce evidence regarding these two acts they would have been limited to the witness' response because the conduct cannot be proved through extrinsic evidence. *Pantazes v. State*, 376 Md. 661 (2003). Additionally, even if evidence is arguably admissible for purposes of impeachment as a bad act not resulting in convictions, it may still be excluded if its probative value is substantially outweighed by danger of unfair prejudice. *Id.* at 683.
>
> The Court is not persuaded by the Petitioner's argument that counsel should have attempted to question the witness concerning these prior incidents. Neither a STET nor a PBJ is a conviction, which would limit the admissibility of cross-examination to the witness' responses to questions. *Pantazes*, 376 Md. at 684. Additionally, disorderly conduct has no bearing on truthfulness. There's no

---

[5] A STET is a disposition of criminal charges where the state's attorney indefinitely postpones trial by marking "stet" on the docket. Md. Rule 4-248.

[6] "PBJ" is an abbreviation for "probation before judgment," which stays the judgment subject to certain conditions. Md. Code, Crim. Proc. § 6-220.

[7] I added "[sic]" because Walker waived the jury and the judge was the trier of fact at his trial, weighing the credibility of witnesses.

information to explain the charge of conspiracy to intercept communication, and therefore no evidence to suggest that it relates to the witness' veracity. Thus there is no credible argument that counsel should have been permitted to ask questions concerning these matters. The only offense that potentially related to veracity was the false statement charge, which was not prosecuted. Absent additional information to demonstrate a basis to question the witness concerning a matter that was dropped, it is an unsupported leap to argue that counsel was ineffective based upon his failure to question the witness in this area…

Trial Counsel attempted to impeach the witness through appropriate lines of questions. Trial counsel was not ineffective in failing to question the witness regarding other alleged bad acts that did not result in convictions, particularly those that were wholly unrelated to the witness' veracity. Petitioner has failed to meet his burden and this allegation is without merit.

As pointed out by the post conviction court, only one of the referenced prior bad acts was probative of truthfulness—making a false statement to a police officer. This charge was marked as a "STET" on the docket, which is a procedural mechanism in which the state's attorney indefinitely postpones trial. Md. Rule 4-248. "Only prior bad acts which are very closely related to the witness' veracity and for which counsel can demonstrate a *firm basis* for believing that the conduct in fact occurred would pass the trial judge's scrutiny." *Pantazes v. State*, 376 Md. 661, 685 (2003) (citing *Robinson v. State,* 298 Md. 193, 201 (1983)) (emphasis in original). The circuit court concluded that Walker failed to produce evidence during the post conviction proceedings, such as the circumstances leading to the charge, to establish that the charge of "false statement to a police officer" would have been admissible under this standard.

It appears that Walker only provided the circuit court with the docket sheet for the charge of "false statement to police officer."[8] Walker faults his post conviction counsel for failing to call

---

[8] Respondent did not include "Exhibit 2" to Walker's post conviction application in the state court record, which appears to be the docket entry from Stacy Penn's charges of "false statement to officer" and "disorderly conduct." According to the Harford County docket, the date of the offense for these charges is September 12, 2009, *https://casesearch.courts.state.md.us/casesearch/inquiry*, which does not match the date of the rape accusation in Harford County on February 27, 2009. ECF 5-4 at 9.

trial counsel as a witness during the post conviction hearing and failing to present facts showing the bad acts were impeachable. ECF 13 at 2.

Ineffective assistance of post conviction counsel is not a basis for federal habeas relief. 28 U.S.C. 2254(i). Furthermore, this court is bound by the evidence introduced during the post conviction proceedings, even when post conviction counsel is at fault for the failure to introduce evidence. *See Shinn v. Ramirez,* ___ U.S. ___, 142 S. Ct. 1718, 1734 (2022) (a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state post conviction counsel). Without evidence that the "false statement to police officer" charge would have been admissible at trial, Walker cannot demonstrate that his counsel's performance was deficient. Accordingly, Walker cannot meet his burden of proof that his trial counsel was ineffective for failing to impeach Stacy Penn with this prior bad act. *See Smith v. Robbins*, 528 U.S. 259, 286 (2000) (the burden is on a habeas petitioner to meet both prongs of the *Strickland* test).

### D.      Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability ("COA") before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects

---

Trial counsel was not called as a witness at the post conviction hearing, so it is unclear whether he made an intentional strategy decision to forgo impeachment with additional prior bad acts, believed the prior bad acts were inadmissible, or was simply unaware of the referenced prior bad acts.

constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  *Id.*

Walker has failed to satisfy this standard on any of his claims.  Therefore, a COA shall not issue.[9]

### E.    Conclusion

For the foregoing reasons, the court will deny Walker's petition for writ of habeas corpus. The court also declines to issue a COA.  A separate Order follows.


July  27, 2022                                          /s/
Date                                             Ellen L. Hollander
                                                 United States District Judge


---

[9] Although this court declines to issue a certificate of appealability, this does not preclude Walker from seeking a COA from the Court of Appeals for the Fourth Circuit.